UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Richard and Shelagh McEvoy, Co-Administrators, ) | |
| Estate of Kevin McEvoy ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civ. No. _____ |
| ) | Jury Trial Demanded |
| Hillsborough County, ) | |
| James O'Mara, Jr., Superintendent of the ) | |
| Hillsborough County House of Corrections, ) | |
| Charles L. Ward, Jr., M.D., Medical Director of ) | |
| the Hillsborough County House of Corrections, ) | |
| Kristi Gray, L.P.N., Bambi Cummings, L.P.N., ) | |
| FNU Ryan, L.P.N., FNU Mailhot, L.P.N., ) | |
| William Fuller, R.N., ) | |
| Correctional Officer Joseph Galvin, ) | |
| Correctional Officer Marc Cusson, ) | |
| Correctional Officer W. Brooks, ) | |
| Correctional Officer T. Sawyer, ) | |
| Correctional Officer C. Faucher, ) | |
| Correctional Officer R. Bourgeois, ) | |
| FNU Scurry, Captain, ) | |
| Unknown Correctional Officers, Hillsborough ) | |
| County House of Corrections ) | |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

### **I.   Introduction**

1.   Plaintiffs, Richard and Shelagh McEvoy file this action complaining of the egregious and unjustifiable conduct of the Defendants named in the caption above. As more specifically set forth below, Plaintiffs' son, Kevin McEvoy, was denied much-needed medical treatment and ultimately died while incarcerated at the Hillsborough County House of

1

Corrections. It is the purpose of this action to recover the actual damages sustained by Plaintiffs' son and his estate as a result of Defendants' conduct and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. Jurisdiction and Venue

2. Plaintiffs seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Kevin McEvoy by the Fourteenth Amendment to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§ 1331 and 1343.

3. Plaintiffs are residents of Massachusetts, Defendants are residents of New Hampshire, and the amount in controversy exceeds $75,000. Accordingly, Plaintiffs seek damages under 28 U.S.C. §1332 for Defendants' negligence and for a medical injury action under RSA 507-E.

4. Plaintiffs also seek damages under the pendent jurisdiction of this Court under 28 U.S.C. § 1367 for Defendants' negligence and for a medical injury action under RSA 507-E.

5. Pursuant to 28 U.S.C. 1391, New Hampshire is the proper venue because all events occurred in New Hampshire.

6. Plaintiffs demand a trial by jury on all issues so triable.

## III. Parties

7. Plaintiffs are residents of Chelmsford, Massachusetts;

8. Defendant Hillsborough County, New Hampshire at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom for, and

was responsible for the employment, training, supervision and conduct of, the officers and employees of the Hillsborough County House of Corrections.

9. Defendant James O'Mara, Jr. was at all times mentioned herein acting individually and/or in his capacity as the Superintendent of the Hillsborough County House of Corrections and was responsible for the overall care and well-being of the inmates living at the Hillsborough County House of Corrections. Pursuant to his authority as the Superintendent of the Hillsborough County House of Corrections, Defendant O'Mara established policies on behalf of Hillsborough County at the Hillsborough County House of Corrections either formally or by custom, and was responsible for the employment, training, supervision and conduct of the officers and employees of the jail.

10. Defendant Charles L. Ward, Jr., M.D. was at all times mentioned herein acting individually and/or in his capacity as a licensed physician and the Hillsborough County House of Corrections' medical director and was responsible for establishing policies on behalf of Hillsborough County pertaining to inmate medical care at the Hillsborough County House of Corrections and for providing medical care to the inmates at the jail, including Kevin McEvoy.

11. Defendants Kristi Gray, L.P.N., Bambi Cummings, L.P.N., FNU Ryan, L.P.N., FNU Mailhot, L.P.N. and William Fuller, R.N. acting individually and/or in their capacity as nurses and employees of Hillsborough County and the Hillsborough County House of Corrections, were responsible for providing skilled nursing care to the inmates at the Hillsborough County House of Corrections, including Kevin McEvoy.

12. Correctional Officers Joseph Galvin, Marc Cusson, R. Bourgeois, W. Brooks, T. Sawyer, C. Faucher, Captain FNU Scurry and unknown correctional officers were acting individually and/or in their capacity as officers and employees of the Hillsborough County

House of Corrections, and were responsible for the welfare and treatment of the inmates at the Hillsborough County House of Corrections, including Kevin McEvoy.

## IV. Facts

13. On August 21, 2008, Kevin McEvoy was arrested for receiving stolen property and was held in lieu of $3,000 bail at the Hillsborough County House of Corrections. During booking, it was obvious that Kevin was a heroin user: needle marks were observed on his left arm; his physical condition, as noted on an initial classification form, was poor and the comments on the same form indicated, "states uses heroin." Kevin's behavior apparently warranted the jail placing him on suicide watch. Defendant Nurse Cummings was informed that Kevin was a suicide risk on August 21, 2008 at 2:20 p.m.

14. Kevin suffered the painful symptoms of heroin withdrawal shortly after his arrival at the Hillsborough County House of Corrections, including nausea and protracted vomiting. Yet, despite his serious and life-threatening symptoms, Kevin was given almost no medical treatment or attention while housed at the Hillsborough County House of Corrections. The interdisciplinary progress notes ("progress notes"), which detail the extent of an inmate's medical care, indicate that over a course of five days, he was visited by a licensed practical nurse only five times: August 21, 2008 at 6:00 p.m., August 22, 2008 at 7:52 p.m., August 25, 2008 at 1:30 p.m., August 25, 2008 at 3:20 p.m. and August 25, 2008 at 4:30 p.m. Notably, Kevin was not seen by any medical personnel on August 23 or August 24.

15. On the initial August 21, 2008 entry in the progress notes, Nurse Gray noted that Kevin was a heroin user who had been recently hospitalized for a seizure and panic attack. According to her notations in the progress note, Nurse Gray notified Dr. Ward of these facts on

August 21, 2008. Although Dr. Ward was advised of Kevin's situation, Dr. Ward never examined Kevin. In fact, Kevin was never seen by Defendant Dr. Ward or any doctor while at the Hillsborough County House of Corrections, despite his known serious and life-threatening heroin withdrawal symptoms.

16. On August 22, 2008, Nurse Cummings indicated in the progress notes that Kevin was on the heroin protocol. The nursing measures included in this protocol required providing an inmate who complains of diarrhea with Kaopectate, providing milk of magnesia (Maalox) to an inmate who complains of nausea and providing Tylenol or ibuprofen to an inmate who claims to be in pain. Defendant Dr. Ward created the nursing measures.

17. On August 22, 2008, Nurse Cummings visited Kevin and noted he was vomiting. The next visit was from William Fuller, R.N. on August 25, 2008 at 1:30. Nurse Fuller noted in the progress notes that Kevin was unable to keep food down and maintain sufficient fluid intake.

18. On August 25, 2008 at 3:20 p.m., Kevin was moved to the medical unit, 1C, due to questioned dehydration. Kevin stated that food and fluids nauseated him. He was placed on bed rest; no other treatment is noted in the progress notes. At that time, Nurse Cummings indicated that Kevin was weak. Nurse Cummings next checked on Kevin at 4:30 p.m. and gave him eight ounces of water and a tray of food. A second tray of food had to be brought because the first tray fell. Kevin was able sit up only with assistance. An unknown correctional officer, referred to as "SGT." in the progress notes, was with Nurse Cummings. Nurse Cummings stated she would return at 8:00 p.m. with more fluids.

19. According to Kevin's medication chart, he was given only Tylenol, Kaopectate and Maalox for his serious withdrawal symptoms. Other than the general security watch

applicable to all inmates, no one specifically monitored Kevin's status, except for the five licensed practical nurse visits listed in the progress notes.

20. On August 25, 2008, another inmate housed across from Kevin's cell on the medical unit observed correctional officers carry Kevin into the cell across from his. At about 3:30 p.m., the inmate yelled out to Kevin to see if he was okay and Kevin moaned in response. After dinner, the inmate again yelled to Kevin and eventually went into Kevin's cell. He noticed vomit all over Kevin's cell and that Kevin did not show any signs of breathing. The inmate told the guard on duty to check on Kevin but an unknown correctional officer told him to move away. About twenty minutes later, the inmate again went into Kevin's cell. He yelled loudly at Kevin to get his attention but he received no response. The inmate again notified the correctional officer on duty but that officer finished passing out laundry to the next pod before checking on Kevin. Upon information and belief, this correctional officer was Defendant Joseph Galvin. Shortly after Officer Galvin checked on Kevin, Officer Galvin called a "10-33" request for medical assistance at approximately 7:45 p.m. Correctional officers and emergency personnel unsuccessfully attempted to revive Kevin; he eventually was transported to the Elliot Hospital where he was pronounced dead.

21. An autopsy was performed upon the late Kevin McEvoy by Jennie V. Duval, M.D., Deputy Chief Medical Examiner for the State of New Hampshire. Dr. Duval examined Mr. McEvoy's body on August 26, 2008. Dr. Duval issued her official autopsy report by date of September 29, 2008.

22. Dr. Duval's official report states as follows:

*AUTOPSY FINDINGS:*

**I. Severe dehydration with acute renal failure due to protracted vomiting.**

> A. History of complaints of persistent vomiting upon admission 08/21/2008 to Hillsborough County Department of Corrections and continuing for the next four days;
> B. History of being discovered prone without vital signs and with vomitus about mouth in prison infirmary cell bed at 19:50 on 08/25/2008;
> C. History of subsequent unsuccessful resuscitation efforts;
> D. Physical signs of dehydration;
>    1. Sunken eyes, "tenting of skin" and tacky mucous membranes;
>    2. Tacky serosal surfaces;
>    3. Minimal dark yellow urine in bladder.
> E. Markedly elevated urea nitrogen (145 mg/dL) and creatinine (2.9 mg/dL) in vitreous fluid;
> F. Histopathologic and microbiological findings of acute aspiration bronchopneumonia.
>
> **II. Chronic intravenous heroin abuse.**
>
> A. History of chronic intravenous heroin abuse and incarceration for heroin use;
> B. Needle track marks, left antecubital fossa;
> C. Scattered foci of polarizable crystals in pulmonary interstitial macrophages;
> D. Postmortem serology positive for Hepatitis C virus antibody (exposure);
> E. No evidence of acute intoxication by heroin or other drugs (see attached toxicology report).
>
> **III. Status post repair of ventricular septal defect.**
>
> **IV. No evidence of trauma**
>
> *CONCLUSION:*
>
> Based upon the investigation report, review of the medical record and autopsy findings, it is my opinion that KEVIN MCEVOY, a 24 year old white man, died as a result of cardiovascular collapse due to severe dehydration with acute renal failure due to protracted vomiting with inadequate volume replacement. The most likely explanation for the persistent vomiting is heroin withdrawal.

23. Between August 21, 2008 and August 25, 2008, the late Kevin McEvoy was in the sole custody of the Hillsborough County House of Corrections located on Valley Street in Manchester, New Hampshire.

24. The Hillsborough County House of Corrections has had numerous prior complaints involving inadequate medical care and inattention to inmates, including inadequate

7

care given during drug withdrawal.  Several inmates and former inmates have claimed that, while housed at the Hillsborough County House of Corrections, they have been denied adequate medical care.

### V. Causes of Action

### Count I –Constitutionally Inadequate Medical Care, 42 U.S.C. § 1983
### Municipal Liability
### Hillsborough County, James O'Mara Jr., acting in his official capacity as the Superintendent of the Hillsborough County House of Corrections and Charles L. Ward, M.D., acting in his official capacity as the Medical Director of the Hillsborough County House of Corrections

25. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

26. To assert a viable cause of action for inadequate medical care, a pretrial detainee must assert facts sufficient to allege that he has been denied adequate care for a serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, 831 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  "Deliberate indifference to serious medical needs may be shown by proving a policy of deficiencies in staffing or procedures such that the inmate is effectively denied access to adequate medical care."  *Anderson v. City of Atlanta*, 778 F.2d 678, 686 n.12 (11th Cir. 1985). "The care provided must have been so inadequate as to shock the conscience."  *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)(quotations omitted).

27. "Heroin withdrawal is a serious medical condition."  *Kelley v. County of Wayne*, 325 F.Supp.2d 788, 791 (E.D.Mich. 2004).

28. A municipality is liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694

8

(1978). "[T]he custom must have been the cause of and the moving force behind the deprivation of constitutional rights." *Bordanaro v. McLeod*, 871 F.2d 1151, 1156 (1st Cir. 1989).

29. Kevin McEvoy suffered from heroin withdrawal and required medical treatment and attention while at the Hillsborough County House of Corrections. His serious medical condition, heroin withdrawal, was known since his first day of incarceration, yet he was denied appropriate medical treatment and attention. Hillsborough County, by and through Defendants O'Mara and Ward, instituted policies and/or protocols at the Hillsborough County House of Corrections that were wholly inadequate regarding the provision of medical treatment and specifically regarding treatment of withdrawal at the jail that violated the inmates' constitutional rights to adequate health care and disregarded the significant risk of harm resulting from such deficient and wholly inadequate policies. *See Farmer*, 511 U.S. at 844-45.

30. Defendant Ward instituted inadequate nursing measures, akin to standing orders, to address potentially life-threatening conditions, such as heroin withdrawal and dehydration. Defendant O'Mara implicitly authorized, approved or acquiesced in such deficient policies and permitted them to continue at the Hillsborough County House of Corrections despite the risks that it posed to every inmate at the Hillsborough County House of Corrections requiring medical attention. Defendants O'Mara and Ward improperly supervised medical personnel at the Hillsborough County House of Corrections and failed to properly train medical personnel regarding heroin withdrawal, inmate monitoring for dehydration and recognition of when dehydration is so severe that further medical intervention, such as IV fluids, is required. Defendants O'Mara and Ward also failed to institute and implement an appropriate heroin withdrawal policy or protocol at the Hillsborough County House of Corrections. Defendants

O'Mara and Ward are policymakers who at all times pertinent to this action acted on behalf of Defendant Hillsborough County.

31. The minimal attention to Kevin McEvoy's known withdrawal symptoms was so patently inadequate and deficient so as to effectually consist of no treatment at all. Such deplorable neglect constitutes deliberate indifference to his serious medical needs, as guaranteed by the Fourteenth Amendment.

32. Defendant Hillsborough County was also deliberately indifferent to the serious medical needs of the inmates of the Hillsborough County House of Corrections because it failed to hire qualified medical personnel to provide medical care to the inmates at the Hillsborough County House of Corrections. Further, Defendant Hillsborough County was deliberately indifferent to the medical needs of the inmates at the Hillsborough County House of Corrections by failing to hire a full time physician.

33. Plaintiffs believe and, after reasonable discovery, will show that their son's treatment by Defendants described above was part of a continuing pattern of misconduct and inattention to the medical needs of the inmates housed at the Hillsborough County House of Corrections, that is the result of customs and practices of Hillsborough County Department of Corrections, either written or unwritten, that are systematically applied to all persons at the Hillsborough County House of Corrections or who, through no fault of their own, exhibit medical conditions or problems while incarcerated at the Hillsborough County House of Corrections. Such practices constitute an arbitrary use of government power, and evince a total, intentional and unreasonable disregard for the constitutional and common law rights of Kevin McEvoy and others like him, and the wholesale violations of those rights likely to result from the systematic pursuit of such practices.

34. As a direct and proximate result Defendants' actions and inactions, as described herein, Kevin McEvoy incurred tremendous pain and suffering, mental anguish and ultimately died.

35. As a result of the foregoing, Kevin McEvoy, as a consequence of Defendants' intentional or grossly negligent conduct, was deprived of due process of law and was subjected to cruel and unusual punishment in violation of the Fourteenth Amendment of the Constitution of the United States in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

### Count II - Constitutionally Inadequate Medical Care, 42 U.S.C. § 1983
### James O'Mara, Jr., Individual Capacity

36. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

37. A supervisor, "may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6-7 (1st Cir. 1998).

38. As Superintendent, Defendant O'Mara has a legal duty to provide medical care to the inmates of the Hillsborough County House of Corrections. *See* RSA 30-B:4.

39. Defendant O'Mara violated Kevin McEvoy's clearly established constitutional right to adequate medical care during the course of his detention at the Hillsborough County House of Corrections. Defendant O'Mara denied access to appropriate medical care to Kevin McEvoy by instituting and/or tolerating deficient policies and/or protocols regarding treatment of heroin withdrawal symptoms with over the counter medications, instituting and/or tolerating deficient policies and/or protocols regarding appropriate monitoring of individuals undergoing withdrawal, failing to promulgate an appropriate policy or protocol regarding heroin withdrawal

11

and by tolerating a general policy of gross inattention to the medical needs of inmates housed at the Hillsborough County House of Corrections.

40. Defendant O'Mara instituted and/or knowingly tolerated policies at the Hillsborough County House of Corrections that were wholly inadequate regarding the provision of medical treatment and specifically regarding treatment of heroin withdrawal at the Hillsborough County House of Corrections, such that he knew of constitutional violations of prisoners' rights to adequate health care and disregarded the significant risk of harm resulting from such deficient and wholly inadequate policies. *See Farmer*, 511 U.S. at 844-45; *Camilo-Robles*, 151 F.3d at 6-7.

41. Defendant O'Mara failed to properly supervise and/or train his subordinates, which resulted in unconstitutional medical care to Kevin McEvoy. The individuals responsible for monitoring Kevin clearly lacked the ability to recognize and properly treat the symptoms of heroin withdrawal, including dehydration, which caused Kevin's death.

42. Defendant O'Mara failed to hire a full-time doctor at the Hillsborough County House of Corrections.

43. Defendant O'Mara knew of the violations of Kevin McEvoy's constitutional rights and did nothing to rectify the violations. There have been numerous prior complaints by current and former inmates against O'Mara and the Hillsborough County House of Corrections regarding inadequate medical care at the facility.

44. Defendant O'Mara created, implemented and maintained a policy or custom of allowing or encouraging these unlawful acts. He had notice of a persistent problem with the lack of adequate medical care at the Hillsborough County House of Corrections and he did nothing to

rectify those problems, despite having the power to prevent unnecessary suffering and, in Kevin McEvoy's case, death.

45. Defendant O'Mara acted with deliberate indifference to the rights, health, safety and welfare of Kevin McEvoy. The treatment provided to Kevin at the Hillsborough County House of Corrections was so inadequate so as to shock the conscience.

46. As a direct and proximate result of Defendant O'Mara's actions and inactions, as described herein, Kevin McEvoy incurred tremendous pain and suffering, mental anguish and ultimately died.

47. As a result of the foregoing, Kevin McEvoy, as a consequence of Defendant's intentional or grossly negligent conduct, was deprived of due process of law and was subjected to cruel and unusual punishment in violation of the Fourteenth Amendment of the Constitution of the United States in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

48. Defendant O'Mara's conduct constitutes a knowing, reckless and callous disregard of Kevin McEvoy's constitutional rights, entitling Plaintiffs to punitive damages.

### Count III – Constitutionally Inadequate Medical Care, 42 U.S.C. § 1983
### Charles L. Ward, M.D., Individual Capacity

49. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

50. Defendant Ward violated Kevin McEvoy's clearly established constitutional right to adequate medical care during the course of his detention at the Hillsborough County House of Corrections. Defendant Ward knew that Kevin McEvoy had serious medical needs related to heroin withdrawal, as evidenced by his continued vomiting and inability to maintain proper intake of food and fluids. Defendant Ward did not examine Kevin, or instruct any medical

personnel at the Hillsborough County House of Corrections to examine Kevin, nor did he appropriately monitor Kevin for signs of dehydration, or instruct any medical personnel at the Hillsborough County House of Corrections to monitor Kevin for signs of dehydration. Defendant Ward failed to refer Kevin to an appropriate facility to treat his obvious withdrawal symptoms including dehydration.

51. Defendant Ward instituted and/or knowingly tolerated policies at the Hillsborough County House of Corrections that were wholly inadequate regarding the provision of medical treatment and specifically regarding treatment of heroin withdrawal at the Hillsborough County House of Corrections, such that he knew of constitutional violations of prisoners' rights to adequate health care and disregarded the significant risk of harm resulting from such deficient and wholly inadequate policies. *See Farmer*, 511 U.S. at 844-45; *Camilo-Robles*, 151 F.3d at 6-7.

52. Defendant Ward denied access to appropriate medical care by instituting inadequate nursing measures, akin to standing orders, to address potentially life-threatening conditions, such as heroin withdrawal and dehydration. Such policies were so wholly inadequate regarding the provision of medical treatment, and specifically regarding treatment of heroin withdrawal at the Hillsborough County House of Corrections, such that he knew of constitutional violations of prisoners' rights to adequate health care and disregarded the significant risk of harm resulting from such deficient and wholly inadequate policies. *See Farmer*, 511 U.S. at 844-45; *Camilo-Robles*, 151 F.3d at 6-7.

53. Defendant Ward failed to properly supervise and/or train the medical personnel at the Hillsborough County House of Corrections, which resulted in unconstitutional medical care to Kevin McEvoy.

54. Defendant Ward knew of the violations of Kevin McEvoy's constitutional rights and did nothing to rectify the violations despite the power to do so.

55. Defendant Ward created, implemented and maintained a policy or custom of allowing or encouraging these unlawful acts.

56. Defendant Ward acted with deliberate indifference to the rights, health, safety and welfare of Kevin McEvoy. The treatment provided to Kevin at the Hillsborough County House of Corrections was so inadequate so as to shock the conscience.

57. As a direct and proximate result of Defendant Ward's actions and inactions, as described herein, Kevin McEvoy incurred tremendous pain and suffering, mental anguish and ultimately died.

58. As a result of the foregoing, Kevin McEvoy, as a consequence of Defendant's intentional or grossly negligent conduct, was deprived of due process of law and was subjected to cruel and unusual punishment in violation of the Fourteenth Amendment of the Constitution of the United States in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

59. Defendant Ward's conduct constitutes a knowing, reckless and callous disregard of Kevin McEvoy's constitutional rights, entitling Plaintiffs to punitive damages.

**Count IV – Constitutionally Inadequate Medical Care, 42 U.S.C. § 1983**
**C.O. Joseph Galvin, C.O. Marc Cusson, C.O. W. Brooks, C.O. T. Sawyer, C.O. C. Faucher, C.O. R. Bourgeois, Capt. FNU Scurry, Nurse Bambi Cummings, Nurse FNU Mailhot, Nurse Kristi Gray, Nurse FNU Ryan, Unknown Correctional Officer, Nurse William Fuller**

60. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

61. Defendants C.O. Galvin, C.O. Cusson, C.O. R. Bourgeois, Captain Scurry, C.O. W. Brooks, C.O. T. Sawyer, C.O. C. Faucher, Nurse Cummings, Nurse Mailhot, Nurse Gray,

15

Nurse Ryan, Nurse Fuller and an unknown correctional officer violated Kevin McEvoy's clearly established constitutional right to adequate medical care during the course of his detention at the Hillsborough County House of Corrections. Defendants knew or should have known that Kevin McEvoy had serious medical needs related to heroin withdrawal, as evidenced by his continued vomiting and inability to maintain proper intake of food and fluids. Notwithstanding the obviousness of Kevin McEvoy's serious need for proper medical care, Defendants denied access to appropriate medical care by rendering inadequate treatment of withdrawal symptoms with over the counter medications, failure to refer him to an appropriate facility to treat his obvious withdrawal symptoms including dehydration and inadequate monitoring of Kevin McEvoy's condition.

62. Defendants acted with deliberate indifference to the rights, health, safety and welfare of Kevin McEvoy. The treatment provided to Kevin at the Hillsborough County House of Corrections was so inadequate so as to shock the conscience.

63. As a direct and proximate result of Defendants' actions and inactions, as described herein, Kevin McEvoy incurred tremendous pain and suffering, mental anguish and ultimately died.

64. Defendants' conduct constitutes a knowing, reckless and callous disregard of Kevin McEvoy's constitutional rights, entitling Plaintiffs to punitive damages

### Count V – Medical Injury, RSA 507-E
### Charles L. Ward, M.D., Nurse Bambi Cummings, Nurse FNU Mailhot, Nurse Kristi Gray, Nurse FNU Ryan, Nurse William Fuller

65. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

66. In a medical injury action, a plaintiff must demonstrate through competent expert witnesses, that the Defendant breached the reasonable standard of care and proximately caused the plaintiff's injuries which would not otherwise have occurred. RSA 507-E:2.

67. Defendants, Charles L. Ward, M.D., Nurse Bambi Cummings, Nurse FNU Mailhot, Nurse Kristi Gray, Nurse FNU Ryan and Nurse William Fuller are medical providers subject to the provisions of RSA 507-E. *See* RSA 507-E:1 (defining medical provider).

68. Each of the Defendants negligently treated Kevin McEvoy while in their care, custody and control, causing excruciating pain because of the denial of treatment and care of his serious medical condition. At all times and places mentioned herein, each of the Defendants carelessly and negligently cared for and treated Kevin McEvoy in light of his above-described medical condition and each of these Defendants conducted themselves in the course of their duties in a careless and negligent manner. Each of these Defendants carelessly and negligently treated, managed, monitored, and supervised Kevin McEvoy's condition during his incarceration at the Hillsborough County House of Corrections which ultimately caused his death.

69. Specifically, the Defendants breached the applicable standard of care by, among other things, failing to properly monitor Kevin McEvoy, who was suffering significant heroin withdrawal symptoms, failing to ensure adequate fluid intake, and failing to refer Kevin McEvoy to a facility where he would receive appropriate treatment of his obvious withdrawal symptoms, which included marked dehydration. The aforementioned acts or omissions directly and proximately resulted in injuries, mental and emotional pain and suffering to Kevin McEvoy, and caused his death.

70. Each of these Defendants knew or should have reasonably known that their conduct toward Kevin McEvoy would exacerbate his serious medical condition and cause him serious injury or death.

71. Each of these Defendants owed a duty to Kevin McEvoy to care for him in the course of their employment.

72. Each of these Defendants breached his or her duty to Kevin McEvoy by providing such deficient medical attention to him so as to constitute no medical attention at all.  As a direct and proximate result of the duty breached, Kevin McEvoy suffered excruciating physical pain and emotional distress and ultimately his death.

73. The Defendants' conduct was willful, wanton, oppressive, malicious and/or dangerous.  This conduct amounts to a gross deviation of the standard of care that a law abiding person would observe in the Defendant's situation.

**Count VI – Negligence**
**Hillsborough County, James O'Mara, Jr., Charles L. Ward, M.D., Nurse Bambi Cummings, Nurse FNU Mailhot, Nurse Kristi Gray, Nurse FNU Ryan, Nurse William Fuller, C.O. Joseph Galvin, C.O. Marc Cusson, C.O. W. Brooks, C.O. T. Sawyer, C.O. C. Faucher, C.O. R. Bourgeois, Capt. FNU Scurry, Unknown correctional officer.**

74. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

75. Defendants owed Kevin McEvoy a duty of reasonable care and breached this duty of care by failing to properly monitor and seek treatment for Kevin McEvoy.  Each of the Defendants negligently treated Kevin McEvoy while in their care, custody and control, causing excruciating pain because of the denial of treatment and care of his serious medical condition.  At all times and places mentioned herein, each of the Defendants negligently cared for and

treated Kevin McEvoy in light of his above-described medical condition and each of these Defendants conducted themselves in the course of their duties in a careless and negligent manner. Each of these Defendants carelessly and negligently treated, managed, monitored, and supervised Kevin McEvoy's condition during his incarceration at the Hillsborough County House of Corrections which ultimately caused his death.

76. Specifically, Defendants knew Kevin McEvoy was in pain and distress related to heroin withdrawal, yet, nevertheless, Defendants ignored Kevin McEvoy's condition despite their duty to care for Kevin McEvoy's welfare while in their custody at the Hillsborough County House of Corrections.

77. Each of these Defendants owed a duty to Kevin McEvoy to care for him in the course of their employment.

78. Defendants Hillsborough County, O'Mara and Ward are vicariously liable for the negligence of its employees and/or agents.

79. As a direct and proximate result of the duty breached, Kevin McEvoy suffered excruciating physical pain and emotional distress and ultimately his death.

80. The Defendants' conduct was willful, wanton, oppressive, malicious and/or dangerous. This conduct amounts to a gross deviation of the standard of care that a law abiding person would observe in the Defendant's situation.

**Count VII – Damages**

81. As a result of the events set forth above, Kevin McEvoy suffered, and his estate is entitled to recover, actual damages for his wrongful death, including enhanced compensatory damages, and for the injuries sustained and the pain and suffering endured as a consequence of

those events. Furthermore, Defendants' violations of Kevin's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for those rights, entitling Plaintiffs to recover punitive damages from Defendants in order to deter such conduct in the future. Accordingly, Plaintiffs seek damages in the amount of Twenty-five million ($25,000,000.00) dollars.

**WHEREFORE**, Plaintiffs request a trial by jury, and further requests that they be awarded actual and punitive damages, together with costs, attorneys' fees and all other relief to which they are entitled under law or in equity.

>Respectfully submitted,
>RICHARD and SHELAGH McEVOY,
>CO-ADMINISTRATORS,
>ESTATE OF KEVIN McEVOY
>
>By Counsel,
>MCDOWELL & OSBURN, P.A.
>
>By  /s/ *Joseph F. McDowell, III, Esq.*
>Joseph F. McDowell, III, Esq.
>NHBN 1675
>PO Box 3360
>282 River Road
>Manchester, NH  03105-3360
>603-623-9300
>jmcdowell@mcdowell-osburn.com