**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**


Richard McEvoy, Shelagh McEvoy,
Co-administrators of the Estate
of Kevin McEvoy

    v.                                Civ. No. 09-cv-431-SM

Hillsborough County et al.


**O R D E R**


In this civil rights and negligence action, Richard and
Sheila McEvoy ("plaintiffs"), as co-administrators of the estate
of their son, Kevin McEvoy ("Kevin"), assert claims against
Hillsborough County, and numerous employees of the Hillsborough
County House of Corrections ("HCHC" or "jail"), for allegedly
violating Kevin's constitutional rights and committing acts of
medical negligence that led to Kevin's August 25, 2008, death
while he was in custody at the HCHC.  Before the court is
plaintiffs' motion to compel (doc. no. 28) and defendants'
objection thereto (doc. no. 31).  On April 14, 2011, the court
heard oral argument on the motion.  For the reasons explained
below, the motion to compel is granted in part and denied in
part.

## Background[1]

On August 21, 2008, Kevin was arrested for receiving stolen
property, could not post bail, and was detained at the HCHC.
During the four days following Kevin's admission to the HCHC, he
experienced heroin detoxification and withdrawal, which caused
him to dehydrate.  On the evening of August 25, Kevin was
pronounced dead.  The medical examiner determined the cause of
death to be "cardiovascular collapse due to severe dehydration
with acute renal failure due to protracted vomiting and
inadequate volume replacement."  Doc. No. 32 at pp. 7-8.

During the booking process, it was plain to those handling
Kevin that he was a heroin user.  Kevin had needle marks on his
arm and admitted that he was a heroin user.  On the day of his
admission, the jail deemed Kevin a suicide risk.  A nurse
notified the jail physician, defendant Charles L. Ward, Jr.,
M.D., that Kevin was a heroin user who had recently been
hospitalized for a seizure and panic disorder.

From August 21 through 25, Kevin could not keep food or
fluids down.  He was observed vomiting throughout that time
period.  Despite his protracted vomiting and insufficient fluid
intake, Kevin was not seen by a physician while at HCHC.  He was
seen by jail nurses on five separate occasions.  Medical notes

---

[1]The factual background is drawn from plaintiffs' amended
complaint.

reveal he was provided with Tylenol, Kaopectate and Maalox during his detention.

On August 25, Kevin was found in his cell, non-responsive and covered in vomit.  Attempts to revive him were unsuccessful. Kevin was transported to Elliot Hospital where he was pronounced dead on arrival.

Plaintiffs' complaint contains four counts alleging that defendants violated Kevin's civil rights by acting with deliberate indifference to his serious medical needs, and two counts alleging medical negligence.[2]  In a seventh count, plaintiffs state the amount they seek in damages.

## Discussion

I.  Discovery Standard Generally

"Unless otherwise limited by court order, the scope of discovery . . . [extends to] any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location

---

[2] Count I alleges municipal liability for deliberate indifference to Kevin's serious medical needs;  Counts II and III allege individual and supervisory liability for deliberately indifferent treatment of Kevin against HCHC Superintendent James O'Mara, Jr., HCHC Assistant Superintendent David Dionne, and Dr. Charles Ward, physician and medical director at HCHC; Count IV alleges deliberate indifference against seven corrections officers and six nurses (although a voluntary nonsuit has been entered against one nurse); Count V alleges medical negligence under N.H. Rev. Stat. Ann. 507-E; and Count VI alleges negligence against all named defendants.

3

of any documents . . .. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

"The purpose of pretrial discovery is to make trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Wamala v. City of Nashua, No. 09-cv-304-JD, 2010 WL 3746008, at *1 (D.N.H. Sept. 20, 2010) (internal quotation marks omitted). In this court, the party moving to compel discovery over an adversary's objection bears the burden of showing that the information he seeks is relevant and not privileged. Id. at *2; Saalfrank v. Town of Alton, No. 08-cv-46-JL, 2009 WL 3578459, at *3 (D.N.H. Oct. 27, 2009).

A party seeking broader discovery of "any matter relevant to the subject matter involved in the action," is required, under the rule, to show "good cause" to obtain that matter. Fed. R. Civ. P. 26(b)(1); see also In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008). The court "must limit the frequency or extent of discovery otherwise allowed" where it determines that:

> (i) the discovery sought is unreasonably cumulative or
> duplicative, or can be obtained from some other source
> that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . .

Fed. R. Civ. P. 26(b)(2)(C).

II. <u>Scope of Discovery Dispute</u>

In their complaint, plaintiffs allege municipal liability against the county for a policy and custom of tolerating inadequate medical care at the jail.  Plaintiffs also allege supervisory liability claims against defendants O'Mara, Dionne, and Ward for tolerating constitutionally deficient practices and policies regarding healthcare at the jail, and for inadequate training and supervision of the personnel at the jail regarding drug detoxification, and the symptoms of withdrawal and dehydration that flow from detoxification.  Plaintiffs further allege that individual defendants, who are or were employees of the jail, were deliberately indifferent to Kevin's serious medical needs.  To assist in proof of these claims, plaintiffs seek the following items in discovery:

(1) a diagram of a particular cell (cell 1D) in which Kevin was housed while in custody;

(2) the personnel records of every named defendant;

(3) the identity of and records relating to any and all inmates who underwent detoxification at the jail during the year prior to Kevin's death (August 2007 through August 2008);

(4) a list of all lawsuits and/or claims filed against HCHC since January 1, 1995, alleging bodily injury or death, including claimant's name, claimant's counsel, the date and forum in which the claim was filed, and the claim's outcome; and

(5) records pertaining to the jail's certification by the National Commission on Correctional Healthcare and the American Corrections Association, and documents pertaining to jail's own internal investigation following Kevin's death.

Plaintiffs contend that the information sought is necessary, or will lead to the discovery of information that is necessary, for plaintiffs to prove their deliberate indifference claims against the county and the supervisory officials (O'Mara, Dionne, and Ward), as well as their claims against the individuals. To the extent that the parties have not agreed on the disposition of the plaintiffs' discovery requests, defendants object (doc. no. 31).

A.   Agreement of the Parties as to Requests 1, 2, 4 and 5

At oral argument on plaintiffs' motion, the parties announced that they had reached agreement on each category of discovery listed above, except the third. According to counsel,

categories 1 and 4 have been satisfied and are now moot.

Defendants have agreed to comply with plaintiffs' requests for

the information sought in categories 2 and 5 within a time frame

of several weeks.  The parties have filed a stipulation (doc.

no. 39) memorializing their agreement as to plaintiffs' second

request, having to do with defendants' personnel records.  Thus,

the court need only address category 3, plaintiffs' request for

non-party inmate medical records.

    B.  <u>Request 3: Nonparty Inmate Medical Records</u>

    Plaintiffs originally asked for the medical records of

inmates who underwent drug or alcohol detoxification or

withdrawal during the three-year period before Kevin's death

(2006 through 2008).  Defendants objected, arguing that the

request was overly burdensome and that disclosure would violate

confidentiality protections under both federal and state law.

To address confidentiality concerns, plaintiffs proposed a

protective order limiting the use of the records to this lawsuit

and requiring that at the close of the litigation, all records

will be either returned to the defendants or destroyed.  In

response to defendants' undue burden argument, plaintiffs

narrowed the request to the one-year period preceding Kevin's

death (August 25, 2007 – August 25, 2008).

Defendants maintain their objections.  They argue that the proposed protective order is insufficient to protect confidentiality.  Further, defendants argue that even with the narrowed time frame, the jail will be required to manually review paper medical records of approximately 5,500 inmates, as the jail has no electronically searchable database of inmate records.

Further complicating the review, according to defendants, is the fact that, prior to Kevin's death, the jail did not maintain any sort of index or documentation protocol (such as a "watch sheet"), to track an inmate's opiate withdrawal.  Defendants state that requiring them to comply with plaintiffs' request would cost the jail an amount that "cannot be calculated."

III. Plaintiffs' Need for the Discovery

As explained above, the sole dispute before the court concerns plaintiffs' entitlement to discover the nonparty inmate medical records for the year preceding Kevin's death.  The court first assesses plaintiffs' need for the discovery by addressing the relevant substantive law.  The court then considers each of defendants' objections to disclosure.

As plaintiffs seek this discovery to prove their deliberate indifference and municipal liability claims, a discussion of the relevant law follows.

A.  Deliberate Indifference

Medical treatment in prison, to offend the constitution, must involve "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).  A pretrial detainee's interest in not being subjected to unconstitutional conditions of confinement is protected by the Fourteenth Amendment, and the parameters of such an interest are coextensive with the Eighth Amendment's protection of a convicted inmate from cruel and unusual punishment. See Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2007).  A prisoner claiming a violation of his Eighth Amendment right to adequate medical care during his incarceration must prove that the defendants' actions amounted to "deliberate indifference" to the inmate's "serious medical need." Braga v. Hodgson, 605 F.3d 58, 61 (1st Cir. 2010); see Surprenant, 424 F.3d at 18-19 (pretrial detainee must show defendant was deliberately indifferent to his health and safety to allege a constitutional violation). "Deliberate indifference" requires more than a showing of medical negligence, instead, requiring proof of an intention "wantonly to inflict pain." Braga, 605 F.3d at 61; see Surprenant, 424 F.3d at 19 (deliberate indifference mental state akin to criminal recklessness).

Kevin was a pretrial detainee at the HCHC when he died. Accordingly, Kevin's interest in constitutionally adequate medical care was protected by the Fourteenth Amendment.  See Surprenant, 424 F.3d at 18.  To prove a violation of that right, plaintiffs must demonstrate that defendants, with deliberate indifference, denied Kevin access to medical care adequate to treat his serious medical need.  See Braga, 605 F.3d at 61; Surprenant, 424 F.3d at 18.

B.  Municipal Liability

> A municipality or other local government may be
> liable under [42 U.S.C. § 1983] if the governmental
> body itself subjects a person to a deprivation of
> rights or causes a person to be subjected to such
> deprivation.  But, under § 1983, local governments
> are responsible only for their own illegal acts.
> They are not vicariously liable under § 1983 for
> their employees' actions.  Plaintiffs who seek to
> impose liability on local governments under § 1983
> must prove that "action pursuant to official
> municipal policy" caused their injury.  Official
> municipal policy includes the decisions of a
> government's lawmaker, the acts of its policymaking
> officials, and practices so persistent and
> widespread as to practically have the force of law.
> These are actions for which the municipality is
> actually responsible.

Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011) (emphasis in original) (quoting Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)) (other internal citations and quotation marks omitted).  In certain circumstances, "a local government's decision not to train certain employees about their

legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick, 131 S. Ct. at 1359 (describing municipality's culpability for a deprivation of rights as "at its most tenuous where a claim turns on a failure to train."). A municipality or local government may be found to be deliberately indifferent to the violation of a person's rights when policymakers choose to retain a program of which they have "actual or constructive notice that a particular omission in their training program causes [municipal] employees to violate citizens' constitutional rights." Id. at 1360 (citing Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997)).

Thus, to prove municipal liability, plaintiffs must show that the defendant HCHC officials were aware of and tolerated the medical defendants' provision of constitutionally inadequate medical care to inmates going through detoxification from drugs or experiencing dehydration. Plaintiffs must demonstrate not only that the practices and medical protocol employed, such as they were, were pervasive enough to be considered "custom or policy," but must also prove that the municipal defendants were aware of that policy and, by allowing it to continue, were deliberately indifferent to the constitutional rights of the

inmates receiving that care.  See Connick, 131 S. Ct. at 1359-60.

To accomplish this, plaintiffs must demonstrate that there were other inmates in medical situations comparable to Kevin's, i.e., going through drug detoxification and withdrawal and/or experiencing dehydration, for whom the medical care provided was constitutionally inadequate.  Plaintiffs must show that these prior incidents gave the municipality actual or constructive notice of the unconstitutionality of the medical care provided in those situations, and that the municipality participated in the harmful act or acts by promulgating and/or tolerating the custom or policy of providing such care.  See id.

The court finds plaintiffs have demonstrated a need for access to the medical records, for the one-year period prior to Kevin's death, of any inmate who received any medical treatment for detoxification or withdrawal from any drug, excepting alcohol, and/or who received any medical treatment for dehydration, beyond the initial HCHC intake interview.[3]  The

_____

[3]The court understands that the HCHC handled alcohol withdrawal entirely differently than detoxification and withdrawal from other drugs.  As there is no dispute as to that difference, and the HCHC protocol for dealing with alcohol withdrawal has been provided to plaintiffs, the specific medical records of inmates who experienced alcohol, but not drug, detoxification and withdrawal at the HCHC are unlikely to be relevant to any issue in dispute in this matter, and plaintiffs

court now weighs this need against defendants' objections on grounds of confidentiality and undue burden.

IV.  <u>Defendants' Objections</u>

    A.  <u>Confidentiality</u>

        1.  <u>Choice of Law</u>

Assertions of privilege in federal court in cases dealing with federal questions are governed by federal law.  <u>See</u> Fed. R. Evid. 501.  State statutes, while binding on state courts determining privilege, do not bind federal courts deciding federal questions.  <u>See</u> <u>Green v. Fulton</u>, 157 F.R.D. 136, 139 (D. Me. 1994) (citing <u>In re Hampers</u>, 651 F.2d 19, 21-24 (1st Cir. 1981)).  Federal privilege law applies to state law claims litigated in federal court pursuant to the federal court's supplemental jurisdiction, rather than under the court's diversity jurisdiction.  <u>See</u> <u>Krolikowski v. Univ. of Mass.</u>, 150 F. Supp. 2d 246, 248 (D. Mass. 2001); Fed. R. Evid. 501 advisory committee's note (citing <u>D'Oench, Duhme & Co. v. FDIC</u>, 315 U.S. 447, 471 (1942) (Jackson, J. concurring)).

Even where federal courts are not required to apply state evidentiary privileges, however, federal courts may, and in some cases should, recognize state evidentiary privileges where to do

have failed to demonstrate sufficient facts to establish a need for the disclosure of those records.

so would not come at substantial cost to federal procedures and substantive policies.  See Green, 157 F.R.D. at 139; see also Hampers, 651 F.2d at 22 (discussing factors to be balanced by federal court in weighing whether or not to recognize a state statutory privilege).

The specific issue before this court, whether or not the requested records are discoverable to help plaintiffs prove municipal liability under § 1983, is a federal question before a federal court.  Accordingly, Fed. R. Ev. 501 applies, and the court, in making its determination, must decide questions of privilege based on federal law.  See Krolikowski, 150 F. Supp. 2d at 248; see also N.O. v. Callahan, 110 F.R.D. 637, 640 (D. Mass. 1986) (evidentiary privileges in federal courts governed by Fed. R. Evid. 501 which also applies to pretrial discovery disputes).  The court also finds, however, that its ruling is consistent with state privilege law.

### 2.  Privacy Interests

Defendants object to the disclosure of private information of nonparty inmates, based in part on the privacy rights of those inmates and in part on state and federal statutes limiting disclosure of private medical information.  The court, in deciding whether or not to allow discovery of certain information, balances Fed. R. Civ. P. 26(b)(1), "which allows

discovery relating to any relevant, non-privileged information," and broader discovery upon a showing of "good cause," against the privacy interests of nonparties to the dispute.  See O'Neil v. Q.L.C.R.I., Inc., 750 F. Supp. 551, 556 (D.R.I. 1990).

The Fourteenth Amendment, serving as a foundation for an individual right of privacy, protects an individual's right to avoid disclosure of his personal and private matters.  See United States v. Mazzola, 217 F.R.D. 84, 88 (D. Mass. 2003) (citing Whalen v. Roe, 429 U.S. 589, 599-600 & n. 23 & 24 (1977)).  "At best, however, the Constitution 'provides qualified protection for medical records.'"  Mazzola, 217 F.R.D. at 88 (emphasis in original).  Both the individual right to privacy in avoiding disclosure of private medical information, and a federal policy protecting medical records, must be balanced against the interest of the plaintiffs here in examining private medical records.  See id. at 88-89 (citing United States v. Polan, 970 F.2d 1280, 1285 (3d Cir. 1992) ("individual's privacy interest in medical records must be balanced against the legitimate need of others in obtaining disclosure")).

3.   <u>Statutory Privileges</u>

a.   <u>HIPAA</u>

The Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. §§ 1320d, et seq., ("HIPAA") "governs the confidentiality of medical records and regulates how and under what circumstances covered entities may use or disclose protected health information about an individual." <u>Cora-Reyes v. P.R. Aqueduct & Sewer Auth.</u>, No. 08-1239 (CVR), 2010 WL 2670872, at *5 (D.P.R. 2010) (citing HIPAA) (internal quotations omitted).  "'Protected health information'" includes all individually identifiable health information maintained or transmitted in any form."  <u>Id.</u>  HIPAA generally prohibits the use or disclosure of an individual's "protected health information" without the individual's authorization.  <u>Id.</u> "Protected health information" may, however, be disclosed, "[i]n response to an order of a court" provided that only the protected health information expressly authorized by such order is disclosed.  45 C.F.R. § 164.512(e)(1)(i).[4]

_____

[4]As required by HIPAA, if the court, at any time, orders any personal identifying information disclosed, such an order will include an appropriate protective order prohibiting the parties from using or disclosing any protected health information for any purpose other than as required by this litigation.  The protective order would further direct the return or destruction of the protected health information at the end of the litigation.  <u>See</u> 45 C.F.R. § 164.512(e)(1)(v).

HIPAA itself does not create a private right of action.  See Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009). Accordingly, any interest in nondisclosure of individual medical records held by a nonparty inmate is not enforceable through HIPAA, and the court will not create a cause of action under HIPAA where the statute has not done so.  See id. at 60.  While violation of HIPAA would not be actionable as to the individual inmate whose private information was disclosed, that statute still demonstrates a "strong federal policy" of protecting medical records.  See Mazzola, 217 F.R.D. at 88 (quoting United States v. Sutherland, 143 F. Supp. 2d 09, 612 (W.D. Va. 2001)).

      b.  PHSA

The Public Health Service Act, 42 U.S.C. § 290dd-2 ("PHSA"), mandates that:

> (a) Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of this section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

. . .

> (b)(2) Whether or not the patient, with respect to whom any given record referred to in subsection (a) of

> this section is maintained, gives written consent, <u>the</u>
> <u>content of such record may be disclosed. . . [i]f</u>
> <u>authorized by an appropriate order of a court of</u>
> <u>competent jurisdiction granted after application showing</u>
> <u>good cause therefore</u>, including the need to avert a
> substantial risk of death or serious bodily harm.  In
> assessing good cause the court shall weigh the public
> interest and the need for disclosure against the injury
> to the patient, to the physician-patient relationship,
> and to the treatment services.  Upon granting of such
> order, the court, in determining the extent to which any
> disclosure of all or any part of any record is necessary,
> shall impose appropriate safeguards against unauthorized
> disclosure.

42 U.S.C. § 290dd-2 (emphasis added).  Defendants have argued

that the statute applies to the inmate medical records held at

the HCHC, to the extent those records may be related to

substance abuse.  The court will presume for purposes of this

order that the HCHC is an agency subject to the mandates of the

PHSA and that the content of the records would fall within the

reach of PHSA.  As is true under HIPAA, disclosure of the

requested information under PHSA is permissible if made pursuant

to an order of this court.

> c.  <u>RSA 329:26</u>

N.H. Rev. Stat. Ann. ("RSA") 329:26 is the state law that

protects the confidentiality of communications between doctors

and their patients and protects doctors from being required to

disclose their patients' private medical records.  In order for

a court to "abrogate [a patient's] statutory privileges and

compel discovery of his medical records, it ha[s] to find that

the records [are] essential to the plaintiffs' case. . . .  This means that the records must not only be relevant, but also unavailable from any other source."  Petition of Haines, 148 N.H. 380, 381, 808 A.2d 72, 74 (2002) (internal quotations and citations omitted).

B.  Undue Burden

In addition to confidentiality, defendants object to disclosure on grounds of "undue burden."  Defendants argue that, even if the request for medical records is limited to one year prior to Kevin's death, they will be significantly burdened because the review will require a manual review of approximately 5,500 paper medical records.  The HCHC does not maintain computerized or electronically searchable records.

The federal rules of civil procedure allow the court to limit or prohibit discovery as required "to protect a party or person from annoyance, embarrassment, oppression, or undue expense."  See Crawford-El v. Britton, 523 U.S. 574, 599 (1998) (citing Fed. R. Civ. P. 26(c)); see also Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 58 (1st Cir. 2010) (trial court enjoys broad discretion in ruling on pre-trial management matters, including requests to compel discovery); Braga, 605 F.3d at 59 (same).  Under Rule 26(c), the trial court must balance the burden to the nonmovant in allowing

the requested discovery against the likely benefit of the
discovery to the movant.  See Gill v. Gulfstream Park Racing
Ass'n, Inc., 399 F.3d 391, 400 (1st Cir. 2005).

V.  Legal Analysis

Having weighed defendants' objections, the court concludes
that disclosure of the nonparty inmate medical records, subject
to redactions to remove identifying information, is warranted.

First, with respect to defendant's "undue burden" objection,
the court is cognizant of the burden imposed on defendants in
conducting this review and is aware of the amount of time,
effort, and cost that will be expended by the review of these
records.  While the court recognizes the burden, the court
finds, under the circumstances, that the burden is not "undue."

Plaintiffs have asserted a clear need for the records
requested in order to prove their municipal liability claim.
Plaintiffs have no means of obtaining the information sought on
their own as the records are exclusively in the defendants'
possession.  Plaintiffs have already narrowed the scope of their
request to one-third of their original time frame.  The court
further limits its order to records of inmates who received some
medical treatment, beyond an intake interview, for drug
detoxification and withdrawal and/or dehydration, excluding

alcohol detoxification unless it also was accompanied by dehydration.

While 5,500 inmates may have passed through the HCHC during the relevant one-year time frame, it is likely that a large number of those inmates received no medical care at all. Accordingly, the review of a large number of the records, even by hand, would need to be only cursory – inmates who received no medical treatment, for example, would require almost none of defendants' time.  Further, records of inmates who received minimal medical care for issues other than those relevant here, and who therefore did not generate a significant medical record, would be quickly identifiable, and would not take an inordinate amount of time to review.[5]

For these reasons, the court finds that the burden on defendants to produce the redacted records of all inmates who received medical treatment, beyond an intake interview, for drug (and not alcohol) detoxification or withdrawal, and/or dehydration, while significant, is not undue under the circumstances presented by the case.

---

[5]While the fact that the records in question must be manually reviewed does present a burden to defendants, the court notes that to relieve defendants of discovery obligations on this basis alone would, in effect, reward defendants for inefficient record-keeping by allowing them to provide less information to plaintiffs here than the court would award a plaintiff who brought suit against a defendant that utilized modern and efficient record-keeping systems.

Second, with respect to defendants' objection on grounds of confidentiality, the court orders the disclosure of records to occur, at least in the first instance, in such a way to avoid statutory or common law privilege issues. HIPAA, the PHSA, and RSA 329:26 govern the disclosure of private medical information that can be identified with a particular patient. Medical records that do not contain references that would identify an individual patient are not protected from disclosure by those statutes. For reasons explained in this order, any records ordered disclosed shall be redacted to obscure any information that might identify any individual as the person to whom the record applies.

Accordingly, defendants are directed to number each record produced to plaintiffs in accordance with this order so that the records can be specifically identified and referenced without a patient name. The record shall be referred to by that number in all documents and argument unless and until the court authorizes any further disclosure of identifying information of the inmate patient. Where, as here, no identifying information has been ordered disclosed, no privilege or privacy right is implicated under any of the sources of privilege proffered by defendants in their objection to the disclosure of the nonparty inmate records in plaintiffs' third discovery request.

Should plaintiffs, after reviewing the redacted records, seek disclosure of any identifying information of any of the inmates to whom the records pertain, the plaintiffs must so petition the court.  Plaintiffs will have to demonstrate that they have a "legitimate need" for the identifying information.  See Polan, 970 F.2d at 1285.  Specifically, plaintiffs will have to demonstrate, with particularity, as to each inmate individually about whom identifying information is sought, that plaintiffs need information that is not contained within the redacted record and that could reasonably be expected to be obtained by identifying the individual associated with the record.

It will be insufficient for plaintiffs to assert a general desire to interview any former inmate who was treated for drug detoxification or withdrawal, and/or dehydration at the HCHC. It is unlikely that defendants will dispute the accuracy of the contents of the HCHC's medical records.  Evidence of the information in the medical record, to the extent it is admissible, is available through the HCHC defendants who prepared the records.  Plaintiffs, to secure identifying information, must demonstrate what information they hope to procure through identification of the inmate patients that will assist in proving their case, and that that information is not available to plaintiffs without the identification of the

nonparty inmate.  Plaintiffs will also have to demonstrate that their need for identifying information is sufficient to overcome any statutory privilege prohibiting or limiting the disclosure of private medical information.  Further, if plaintiffs seek identifying information for any individual nonparty inmate, plaintiffs will be required to demonstrate not only why the identifying information of the inmate is necessary for the successful prosecution of this action, but also why that necessity outweighs the privacy interests of the nonparty inmates in nondisclosure.  See Mazzola, 217 F.R.D. at 88-89.

In sum, the balance of interests weighs in favor of granting plaintiffs' request, subject to the above-described limitations as to what records are to be disclosed, and the disclosure of identifying information in those records.

### Conclusion

With respect to requests 1, 2, 4 and 5 in plaintiffs' motion to compel (doc. no. 28), the motion is DENIED.  Because the parties entered into an agreement at oral argument, as partially documented in a stipulation (doc. no. 39), those requests as moot.

As to request 3, plaintiffs' motion is GRANTED subject to the following limitations:

1.  Defendant HCHC is to produce to plaintiffs copies of HCHC inmate medical records for the year prior to Kevin's death, in which the inmate who is the subject of the record was treated at the HCHC for either: (1) drug detoxification and withdrawal (excluding those inmates who experienced only alcohol detoxification and withdrawal without dehydration), and/or (2) dehydration.

2.  Defendant HCHC, prior to production of the records, is to redact any information in the records that would tend to identify the inmate to whom the record pertains.  Each inmate for whom a record is provided is to be identified by a number assigned by defendant prior to production.

3.  The requested records are to be provided to plaintiffs within twenty-one days of the date of this Order.

4.  To obtain identifying information for any inmate for whom a redacted record has been produced, plaintiffs must first petition the court for an order to release the identifying information.  Such petition shall show good cause why the identification will contain or lead to essential evidence beyond what is contained in the redacted records.  Upon good cause shown, with specificity, for a particular inmate's record, the court will consider whether disclosure of that inmate's identity is warranted under applicable law.

25

To the extent plaintiffs' motion seeks additional information in discovery not agreed to by defendants at oral argument, or specifically allowed here, the motion is DENIED.

**SO ORDERED.**

_____
Landya B. McCafferty
United States Magistrate Judge

Date:   May 5, 2011

cc:     John A. Curran, Esq.
        Jonathan A. Lax, Esq.
        Joseph F. McDowell, III, Esq.
        Jeffrey B. Osburn, Esq.

LBM:jba